IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2016 OCT 25  PM 2:49
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
      DEPUTY

ONE WORLD FOODS, INC.,
        Plaintiff,

-vs-                                                                  Case No. A-15-CA-1071-SS

STUBB'S AUSTIN RESTAURANT COMPANY
LC; FBR MANAGEMENT, LLC; MIKE FARR;
MATT LUCKIE; and JEFF WAUGHTAL,
        Defendants.

## <u>O R D E R</u>

BE IT REMEMBERED on the 13th day of October 2016, the Court held a hearing in the above-styled cause, and the parties appeared by and through counsel. Before the Court is Plaintiff One World Foods, Inc.'s Motion to Disqualify Counsel [#56], Defendants Stubb's Austin Restaurant Company LC, FBR Management LLC, Mike Farr, Matt Luckie, and Jeff Waughtal's (Defendants) Response [#62] in opposition, and Plaintiff's Reply [#63] in support. Having reviewed the documents, the arguments of the parties at the hearing, the relevant law, and the file as a whole, the Court enters the following opinion and order DENYING the motion.

        Plaintiff moves to disqualify law firm Pirkey Barber PLLC (Pirkey Barber) from representing Defendants, alleging Pirkey Barber previously represented Plaintiff. Because the Court finds no prior attorney–client relationship existed between Plaintiff and Pirkey Barber and the balance of factors cuts against disqualifying Pirkey Barber, the Court denies Plaintiff's motion to disqualify.

Earlier in this case, this Court ruled on three other motions discussed at the October 13th hearing. Order [#91] (ruling on Defendants' motion to compel, Pirkey Barber's motion to quash, and Plaintiff's motion for a preliminary injunction). Because those three motions required a rapid response and Plaintiff's motion to disqualify necessitated a more thorough order, the Court divided the motions discussed at the October 13th hearing into two opinions. Although the Court previously recounted the facts of this case, we must begin again at the beginning and a summary of key facts follows.

## Background

**I.   Whose Right?**

This case centers on who has the right to Stubb's legacy, specifically through the ownership and use of a variety of STUBB'S marks.[1]

Plaintiff is in the business of making and selling STUBB'S barbecue sauces, rubs, and marinades. Am. Compl. [#24] ¶ 1. Defendants own or operate restaurants in Austin, Texas. *Id.* ¶¶ 2–5. Defendant Stubbs Austin Restaurant Company LC (SARC) owns and operates a barbecue restaurant called Stubb's Bar-B-Q at 801 Red River Street in Austin, TX (Stubb's Red River St.). *Id.* ¶¶ 2, 26. SARC also offers catering services using STUBB'S marks at a bar called the Mean Eyed Cat. Defendants Mike Farr, Matt Luckie, and Jeff Waughtal operate a mixed restaurant and retail venue on the outskirts of Austin called Graceland Grocery, which includes a barbecue restaurant called Stubb's Bar-B-Q at Graceland Grocery (Graceland Grocery). *Id.* ¶¶ 4, 27. Finally, Defendant

---

[1] While the scope of the marks at issue has yet to be precisely defined, the parties appear to be contesting the use of the word STUBB'S and images of restauranteur "Stubb" in connection with barbecue sauces, marinades, and rubs; restaurant and catering services; entertainment and live music services; as well as on products such as t-shirts, beverage containers, aprons, and caps. *See* Am. Compl. [#24]; Defs.'s Answer [#30].

FBR Management LLC (FBR) owns a tavern in Austin called Lala's Little Nugget. *Id.* ¶ 4. Defendants plan to serve barbecue under the STUBB'S mark at Lala's Little Nugget. *Id.* ¶ 30; Defs.'s Answer [#30] ¶ 30.

According to Plaintiff, it acquired all intellectual property interests from restauranteur Stubb. It then granted permission to SARC to use the STUBB'S marks to open Stubb's Red River St. and authorized SARC to provide catering services using the STUBB'S marks at Mean Eyed Cat. Am. Compl. [#24] ¶ 26. Plaintiff claims this arrangement was an implied trademark license of the STUBB'S marks, limited only to restaurant services at Stubb's Red River St. and catering services at Mean Eyed Cat. *Id.* Consequently, Plaintiff files this suit, alleging the use of the STUBB'S marks at Graceland Grocery and Lala's Little Nugget violates the implied trademark license and seeking to stop the use of the STUBB'S marks at any unauthorized locations as well as damages. *Id.* ¶¶ 27–31, 36–76. Plaintiff has numerous registrations for the STUBB'S marks. *Id.* ¶¶ 13–25.

Defendants, on the other hand, claim SARC never operated under a license from Plaintiff but SARC and Plaintiff peacefully coexisted for twenty years: Plaintiff used the STUBB'S marks for barbecue sauce, marinades, and related goods while SARC used the STUBB'S marks for restaurant, catering, and entertainment services. Defs.'s Answer [#30] ¶¶ 6–18. Thus, Defendants claim Plaintiff never owned the STUBB'S marks and Plaintiff fraudulently filed for numerous trademark registrations. *Id.* ¶¶ 24–28. Additionally, Defendants counterclaim Plaintiff is improperly using SARC's signage on its barbecue sauce labels. *Id.* ¶¶ 38–59.

II.     **Prior Negotiations**

In 2013, Plaintiff and SARC began exploring options to expand the STUBB'S restaurant and entertainment concept with other investors. Pl.'s Mot. Disqualify [#56] at 3; Mot. Quash [#60] at 2.

With investors Raine Group and C3 Presents,[2] Plaintiff and SARC discussed establishing "Newco." *Id.* Although the negotiations to form Newco eventually failed, the actors and events of these negotiations shape this suit. *See* Pl.'s Mot. Disqualify [#56] at 3–5; Mot. Quash [#60] at 2–5.

A topic of concern for all of the participants in the negotiations was the strength of the STUBB'S marks. Pl.'s Mot. Disqualify [#56] at 3; Mot. Quash [#60] at 3. Consequently, C3 Presents's attorney, Wayne Hollingsworth,[3] approached Louis Pirkey and Jered Matthysee, attorneys from Pirkey Barber, to explore retaining the law firm and how the law firm might assist with the negotiations as trademark specialists. Mot. Quash [#60] at 2. Hollingsworth was considering retaining Pirkey Barber to represent C3 Presents and later represent Newco once formed. Defs.' Resp. Mot. Disqualify [#62] at 2.

Thus, on February 20, 2013, Hollingsworth arranged a meeting at C3 Presents's offices between the representatives of Plaintiff, SARC, C3 Presents, and Pirkey Barber (February 2013 meeting). Pl.'s Mot. Disqualify [#56] at 3; Mot. Quash [#60] at 2–3. To prepare for the meeting, the Pirkey Barber attorneys preformed a basic search on the STUBB'S marks and for similar marks. Defs.' Resp. Mot. Disqualify [#62] at 3. At the meeting, the Pirkey Barber attorneys reported their findings, identifying a third-party's mark for whiskey, FAT MAN AND STUBBS, and its next-day opposition deadline. Pl.'s Mot. Disqualify [#56] at 3; Mot. Quash [#60] at 3. For the benefit of all the Newco meeting participants, the Pirkey Barber attorneys noted filing an extension for more time to oppose the FAT MAN AND STUBBS mark was a good idea; filing an extension would give the

---

[2] Raine Group and C3 Presents are not parties to this lawsuit but were involved in the 2013 conversations with Plaintiff to form a new business venture, Newco, as potential major investors. *See* Defs.' Resp. Mot. Disqualify [#62].

[3] Wayne Hollingsworth, an attorney at Armbrust & Brown, PLLC, represented C3 Presents in the Newco negotiations. Defs.' Resp. Mot. Disqualify [#62] at 1–2.

Newco negotiators more time to consider a response, especially as only one day remained to oppose the third-party mark. *See* Defs.' Resp. to Mot. Disqualify [#62] at 2–4; Pl.'s Mot. Disqualify [#56] at 3.

The February 2013 meeting participants also discussed the possibility of Plaintiff retaining Pirkey Barber. *Id.* Soon after the meeting, Pirkey Barber sent Plaintiff an engagement letter, but Plaintiff never signed it. Pl.'s Mot. Disqualify [#56] at 3–5; Mot. Quash [#60] at 3. Instead, Plaintiff emailed Pirkey Barber a revised copy of the engagement letter, deleting language which required Plaintiff to waive conflicts of interest with the other Newco negotiators and the potential Newco entity. Pl.'s Mot. Disqualify [#56] at 4; Defs.' Resp. Mot. Disqualify [#62] at 3. Pirkey Barber did not agree to Plaintiff's changes and thus did not sign the altered engagement letter. Defs.' Resp. Mot. Disqualify [#62] at 3.

Because Plaintiff and Pirkey Barber did not come to an agreement on the conflict waiver and Plaintiff did not sign an engagement letter, Pirkey Barber did not file the extension for Plaintiff. *Id.* Ex. F. With the impending deadline to oppose the FAT MAN AND STUBBS mark, Pirkey Barber suggested Plaintiff's retained trademark attorney, Dale Langley, file the request for the extension. *Id.* Ex. D. Dale Langley then filed the extension and informed Plaintiff it was successfully filed. *Id.* Plaintiff then informed Pirkey Barber. *Id.*

Ultimately, C3 Presents engaged Pirkey Barber to represent only C3 Presents in the Newco negotiations. Mot. Quash [#60] at 3. Pirkey Barber never signed an engagement letter with Plaintiff, invoiced Plaintiff for any work, or received any payment from Plaintiff.

Pirkey Barber, specifically Louis Pirkey and Jered Matthysee, now represent Defendants in the current suit.

### III. Procedural Posture

Plaintiff filed this suit in November 2015. *See* Compl. [#1]. Now, approximately ten months later, Plaintiff moves for disqualification of Defendants' counsel. Fact discovery has been completed and dispositive motions are due by December 1, 2016. Scheduling Order [#37] at 2.

## Analysis

### I. Motion to Disqualify—Legal Standard

#### A. Choice of Law

"When considering motions to disqualify, courts should first look to 'the local rules promulgated by the local court itself.'" *In re ProEducation Intern., Inc.*, 587 F.3d 296, 299 (5th Cir. 2009) (quoting *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995)). The Local Rules of the Western District of Texas, in a section titled "Discipline of Attorneys," provide "[m]embers of the bar of this court and any attorney permitted to practice before this court must comply with the standards of professional conduct set out in the Texas Disciplinary Rules of Professional Conduct . . . ." Local Rule AT-7(a).

The Fifth Circuit has made clear, however, the Texas Rules "'are not the sole authority governing a motion to disqualify.'" *ProEducation*, 587 at 299 (quoting *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992)); *see also In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992) ("The district court clearly erred in holding that its local rules, and thus the Texas rules, which it adopted, are the 'sole' authority governing a motion to disqualify."). "[D]isqualification cases are governed by state and national ethical standards adopted by the [Fifth Circuit]". *Am. Airlines*, 972 F.2d at 610 (examining both the American Bar Association Model Code and Texas Disciplinary Rules of Professional Conduct); *see also Dresser*, 972 F.2d at 543 (explaining "[m]otions to

disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law.") (citing *Woods v. Covington Cnty. Bank*, 537 F.2d 804, 810 (5th Cir. 1976)).

B.  **Applicable Standards**

   1.  **The Texas Rules, the Model Rules, and Their Role in this Court's Analysis**

In deciding a motion to disqualify, the Court considers both the Texas Disciplinary Rules of Professional Conduct (Texas Rules) and the American Bar Association's (ABA) Model Rules.

In relevant part, Texas Rule 1.09 states:

> (a)  Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>
>    (1)  in which such other person questions the validity of the lawyer's services or work product for the former client;
>
>    (2)  if the representation in reasonable probability will involve a violation of Rule 1.05 [dealing with confidential client information]; or
>
>    (3)  if it is the same or a substantially related matter.
>
> (b)  Except to the extent authorized by Rule 1.10, when lawyers are or have become members of or associated with a firm, none of them shall knowingly represent a client if any one of them practicing alone would be prohibited from doing so by paragraph (a).

TEX. DISCIPLINARY R. PROF'L CONDUCT 1.09, reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A, art. 10, § 9 (Vernon 2005).[4]

---

[4] The current version of the Texas Rules became effective January 1, 1990. *See ProEducation*, 587 F.3d at 300 n.2 (citing *Clarke v. Ruffino*, 819 S.W.2d 947, 949 (Tex. App.—Hous. [14th Dist.] 1991, writ dism'd w.o.j.)).

The relevant ABA Model Rule, Rule 1.9(a), has some "linguistic differences" from Texas Rule 1.09, but "the two codes produce the same result in application . . . ." *ProEducation*, 587 F.3d at 301; *see also Am. Airlines,* 972 F.2d at 610 (noting the "ABA Rules do not differ materially from the corresponding Texas Rules").

Yet, as reaffirmed by the Fifth Circuit in *Dresser*, "standards such as the ABA canons are useful guides but are not controlling in adjudicating such motions." *Dresser*, 972 F.2d at 543–44 (citing *Woods v. Covington Cty. Bank,* 537 F.2d 804 (5th Cir. 1976)). Whether it be the Texas Rules or the Model Rules, the Fifth Circuit has stated "inflexible application of a professional rule is inappropriate because frequently it would abrogate important societal rights, such as the right of party to his counsel of choice and an attorney's right to freely practice her profession." *U.S. Fire,* 50 F.3d at 1314 (citing *Woods*, 537 F.2d at 813). Thus, the Fifth Circuit considers "whether a conflict has (1) the appearance of impropriety in general or (2) a reasonable possibility that a specific impropriety has occurred, and (3) the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." *Dresser*, 972 F.2d at 543 (citing *Woods*, 537 F.2d at 812–13); *see also Brennan's Inc. v. Brennan's Restaurant, Inc.,* 590 F.2d 168 (5th Cir. 1979) (applying the *Woods* standard).

In sum, a court weighs the ethical rules with the public interest and the litigants' rights in deciding the substantive motion to disqualify under federal law. *ProEducation*, 587 F.3d at 299 (quoting *Amer. Airlines*, 972 F.2d at 610). The Fifth Circuit emphasized: "'The rule of disqualification is not mechanically applied in this Circuit.'" *U.S. Fire,* 50 F.3d at 1314 (quoting *Church of Scientology of Ca. v. McLean,* 615 F.2d 691, 693 (5th Cir. 1980)). Consequently, "[a]ll

of the facts particular to a case must be considered, in the context of the relevant ethical criteria and with meticulous deference to the litigant's rights." *Id.*

### 2.     The Substantial Relationship Test

Focusing on Fifth Circuit precedents applying the Texas Rules and ABA Model Rules, cases involving prior representations have been governed by the "substantial relationship" test. *See Am. Airlines*, 972 F.2d at 614. This test instructs:

> A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney–client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations.

*Id.* (citations omitted).

The threshold inquiry for the substantial relationship test is whether an attorney–client relationship between the moving party and the attorney sought to be disqualified actually existed. *See id.* (noting the attorney–client relationship was undisputedly satisfied before turning to whether the prior representation was substantially related to the present case). The Texas Rules expressly note "[m]ost of the duties flowing from the client–lawyer relationship attach only after the client has requested the lawyer to render legal services and the lawyer has agreed to do so. . . .[I]ndividual circumstances and principles of substantive law external to these rules determine whether a client–lawyer relationship may be found to exist." TEX. DISCIPLINARY R. PROF'L CONDUCT PREAMBLE: SCOPE ¶ 12; *See also* MODEL RULES OF PROF'L CONDUCT PREAMBLE: SCOPE ¶ 17 (Am. Bar Ass'n 2014).

3.  **Attorney–Client Relationship**

The Fifth Circuit has remarked the existence of an attorney–client relationship "depends on a contract, express or implied, between the parties." *Simpson v. James*, 903 F.2d 372, 376 (5th Cir. 1990). And looking to Texas precedent, the Fifth Circuit concluded the payment of a fee is not required and a contract of employment "may exist merely as a result of an offer or request made by the client and an acceptance or assent thereto by the attorney." *Id.* (citing *State v. Lemon*, 603 S.W.2d 313, 318 (Tex. App.—Beaumont 1980, no writ)).

Regardless of whether the agreement is express or implied, "the parties both must understand and mutually agree to the 'nature of the work to be undertaken.'" *SMWNPF Holdings, Inc. v. Devore*, 165 F.3d 360, 364–65 (5th Cir. 1999) (quoting *Parker v. Carnahan*, 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, writ denied). "'[T]here still must be some manifestation that *both* parties intended to create an attorney–client relationship; therefore, one party's mistaken belief is not sufficient, by itself.'" *Tierra Tech de Mexico SA de CV v. Purvis Equip. Corp.*, No. 3:15-CV-4044-G, 2016 WL 4062070, at *2 (N.D. Tex. July 29, 2016) (emphasis in original) (quoting *Valls v. Johanson & Fairless, L.L.P.*, 314 S.W.3d 624, 634 (Tex. App.—Houston [14th Dist.] 2010, no pet.)). To determine if that mutual intent existed, the parties' statements and action are examined under an objective standard rather than a subjective one. *Id.*

II.  **Application**

Here, Plaintiff argues it interaction with Pirkey Barber's in February 2013 established an attorney–client relationship and Pirkey Barber should be disqualified from representing Defendants. Defendants, on the other hand, claim no attorney–client relationship between Pirkey Barber and Plaintiff ever existed. The Court agrees with Defendants. Disqualification of Pirkey Barber in this

case would be improper because the first element of the substantial relationship test, an actual attorney–client relationship, is not met and the balance of factors opposes disqualifying Pirkey Barber.

A.      **No Attorney–Client Relationship Intended**

An objective assessment of Pirkey Barber and Plaintiff's statements and actions in February 2013 reveals no mutual intention to create an attorney–client relationship. Instead, the facts demonstrate Pirkey Barber and Plaintiff explored creating an attorney–client relationship but ultimately did not agree on the nature of the work to be undertaken. Therefore, the Court finds no attorney–client relationship between Plaintiffs and Pirkey Barber; the first element of the substantial relationship test, the threshold requirement, is not met. Disqualification of Pirkey Barber in this case would be improper, and the Court need not analyze the second element of the test.

As a preliminary matter, no express agreement governs an attorney–client relationship between Pirkey Barber and Plaintiff. Rather, Plaintiff argues, the two parties had an implied attorney–client relationship. As evidence the parties considered creating an attorney–client relationship, Plaintiff points to Pirkey Barber and Plaintiff's interactions surrounding the February 2013 meeting. Specifically, Plaintiff emphasizes the two parties "discussed the formation of an attorney–client relationship, exchanged calls and voice messages, exchanged drafts of an engagement letter, discussed trademark strategy, and even collaborated on an extension of time to oppose a third-party trademark filing." Pl.'s Mot. Disqualify [#56] at 6.

But communication regarding a potential attorney–client relationship is not enough to establish such a relationship. Previously, evaluating email conversations in another case, this Court concluded an attorney–client relationship was formed where the attorney "was privy to confidential

discussions about a potential lawsuit, and he actively set up a meeting himself to discuss the litigation strategy." *Nat'l Oilwell Varco, L.P. v. Omron Oilfield & Marine, Inc.*, 60 F. Supp. 3d 751, 765 (W.D. Tex. 2014). In that case, it was undisputed the attorney's prior firm had represented the defendant. *Id.* at 755. The inquiry focused on whether a specific attorney had a personal attorney–client relationship with the defendant. *Id.* The Court found the attorney's receipt of confidential information and active role setting up a litigation strategy meeting provided sufficient manifestation that *both* parties intended to create an attorney–client relationship. *See id.* In particular, the attorney and defendant in *National Oilwell* agreed the attorney participated in multiple phone calls and emails with the client regarding the validity of the patent at issue and a potential lawsuit. *Id.* at 755–56.

Here, in contrast, the parties contest the existence of any attorney–client relationship. Furthermore, in *National Oilwell,* the defendant's allegations of an attorney client relationship were supported by emails demonstrating the attorney's inclusion in confidential discussions. *Id.* In this case, Plaintiff alleges Pirkey Barber was privy to confidential discussions but fails to provide any evidence of these discussions or describe what confidential information might have been shared. Pl.'s Mot. Disqualify [#56] at 9–10. Plaintiff only speculates confidential information might have been shared as Plaintiff and Pirkey Barber discussed a potential engagement. *Id.* Without more, such speculation is insufficient.

Plaintiff does argue, however, Pirkey Barber directed strategy. Pl.'s Mot. Disqualify [#56] at 6. But the facts of this case show otherwise.

First, the Pirkey Barber attorneys attended the February 2013 meeting at the invitation of C3 Presents, not Plaintiff. Hosting the meeting at its office, C3 Presents explored retaining Pirkey

Barber and ultimately did retain Pirkey Barber to represent only C3 Presents in the Newco negotiations. Pirkey Barber merely attended a meeting, at which Plaintiff happened to be present, at the invitation of another potential client.

Second, at the meeting Pirkey Barber made an obvious suggestion: the parties should file for an extension of time to oppose the third-party mark to benefit all the Newco negotiators and preserve the status quo. Pirkey Barber's suggestion was not advice targeted at Plaintiff.

Most significantly, Pirkey Barber did not perform work for Plaintiff, refusing in particular to file the extension of time to oppose the third-party mark, until the parties agreed on the conflict waiver and signed an engagement letter. Consequently, Plaintiff's already-retained trademark attorney, Dale Langely, filed the extension. Langley did not report the successful filing to Pirkey Barber, but instead reported the completion of the filing to Plaintiff.

Pirkey Barber's refusal to file the extension demonstrates an attorney–client relationship had not been created: There was no assent by the attorney to an offer of employment. And although Plaintiff claims Pirkey Barber directed Langley to file the extension, Langely reported the completion of the extension to Plaintiff, not Pirkey Barber, because it was Plaintiff that directed Langley's work. Plaintiff provides no evidence Pirkey Barber substantively collaborated with Plaintiff on the filing of the extension beyond the suggestion an extension should be filed.

While Plaintiff also argues the parties agreed on the work to be performed, Pirkey Barber and Plaintiff only agreed on the tasks that would be performed if an attorney–client relationship was created. *See* Pl.'s Mot. Disqualify [#56], Mason Decl. Exs. A, B (Drafts of Engagement Letter). Plaintiff and Pirkey Barber specifically disagreed on the conflict waiver, a key component of the nature of the work to be undertaken where several parties were considering forming a new entity.

In sum, no attorney–client relationship was formed between Plaintiffs and Pirkey Barber. Thus, the Court finds the first element of the substantial relationship test not met, and the Court need not analyze the second element of the test. Under the substantial relationship test, disqualification of Pirkey Barber is improper.

**B.    Balance of Factors Does Not Favor Disqualification**

Weighing the ethical rules with the public interest and the litigants' rights, the Court also concludes the facts of this case favor allowing Pirkey Barber's continued representation of the Defendants by Pirkey Barber.

Applying the *Woods* standard, the Court finds the Fifth Circuit's three considerations do not support disqualification here. *See Dresser,* 972 F.2d at 543 (citing *Woods,* 537 F.2d at 812–13). Any appearance of impropriety is slight. Pirkey Barber was never formally retained by Plaintiff or represented Plaintiff in any substantive matter. Plaintiff's allegation Pirkey Barber provided it with advice focuses on one suggestion to file an extension for opposition to a third-party trademark. Pirkey Barber did not even file that extension on Plaintiff's behalf as Plaintiff's retained trademark attorney filed the extension. Consequently, the Court finds a limited appearance of impropriety.

Further, the Court reasons the likelihood of public suspicion in this case is small. Plaintiff does not allege with any specificity that Pirkey Barber gained confidential information. Thus, allowing Pirkey Barber to continue representing Defendants does not threaten the trust and reliance clients place in their attorneys. *See Brennan's Inc.,* 590 F.2d at 172 (discussing the rationale for avoiding public suspicion, i.e. the concern an attorney would misuse information acquired during the course of a prior representation). Thus, application of the *Woods* standard to this case does not favor disqualification.

In addition to the *Woods* standard, the costs and benefits of disqualifying Pirkey Barber disfavor disqualification. *See In re DataTreasury Corp.*, No. 2010-M928, 2010 WL 3074395 (Fed. Cir. Aug. 5, 2010) (unpublished) (affirming a similar balancing test and noting "the Fifth Circuit has on multiple occasions conducted a similar balancing test after reaching the conclusion that the substantial relationship test had been met") (citation omitted).

Disqualifying Pirkey Barber would impose significant costs in time and money on the Defendants. With fact discovery completed and dispositive motions due in little over a month, disqualifying Defendants' counsel would likely cause significant delays in the case. By contrast, Plaintiff waited ten months after the start of this suit to file its motion for disqualification.[5] Furthermore, the assertion that Pirkey Barber's representation of Defendants would "taint" Plaintiff's claims and defense is Plaintiff's only allegation of harm. Pl.'s Reply Supp. Mot. Disqualify [#63] at 5. Plaintiff fails to show any harm it might suffer outweighs the harm Defendants would incur if Pirkey Barber were disqualified.

Even if the Court had found an attorney–client relationship existed between Plaintiff and Pirkey Barber, such a relationship would be minimal, composed of only a brief interaction and limited representation. Allowing such an encounter to disqualify Pirkey Barber would be an inflexible application of the professional rules, abrogating Defendants' right to counsel of their choice and Pirkey Barber's right to freely practice.

---

[5] Plaintiff claims it only became aware of the alleged prior representation on September 1, 2016, during its counsel's review of documents collected from the Plaintiff's former officers. Pl.'s Mot. Disqualify [#56] at 5. The Court finds this reason for the delay unpersuasive and, if anything, believes it suggests the alleged prior representation is unnoteworthy.

Thus, the Court finds the balance of the ethical rules, public interest, litigants' rights, and facts of this case does not favor disqualifying Pirkey Barber.

## Conclusion

In total, because the Court has determined there was no prior attorney–client relationship between Pirkey Barber and Plaintiff and the balance of facts and equitable factors does not support disqualification, Plaintiff's motion to disqualify must be denied.

Accordingly,

IT IS ORDERED that Plaintiff One World Foods, Inc.'s Motion to Disqualify Counsel [#56] is DENIED.

SIGNED this the 25th day of October 2016.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE